The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes and the briefs and oral arguments before the Full Commission. The parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff's alleged date of injury is August 2, 1999.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employee-employer relationship existed between the parties.
4. Atlantic Mutual was the compensation carrier on the risk.
5. Judicial notice may be taken of all Industrial Commission forms on file.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was nineteen years of age on the date of the hearing before the Deputy Commissioner and received her high school degree in May 1999. As of the date of the hearing, she was attending Wake Technical Community College.
2. Plaintiff began employment with defendant-employer, Griffin Services, in June 1999 immediately after graduating from high school. She was assigned to work at Hunter Industries in Cary, North Carolina. Prior to beginning work with defendant-employer, plaintiff had no significant problems with her hands, wrists or arms.
3. The work at Hunter Industries was assembly-type work, which involved assembling components for lawn sprinklers. Plaintiff had to retrieve parts, grip each part, put it in place and then press the parts to fit them together. Workers would rotate workstations. However, all of the work was repetitive and involved hand assembly of components. Plaintiff had never performed this type of highly repetitive work prior to her employment with defendant-employer. There was a production requirement of 2,500 parts per day. Plaintiff always met and usually exceeded the production requirement.
4. Plaintiff worked part-time during high school. When plaintiff began work for defendant, she was paid $7.50 per hour. She received a raise in July 1999 to $7.75 per hour. She worked 40 hours per week.
5. Beginning the second week of June 1999, plaintiff began experiencing symptoms of pain and soreness in her hands, wrists and arms. Her symptoms were bilateral, but more severe on the right side.
6. Plaintiff reported her problems to Mike Waters, her supervisor. She filled in a company form and was sent to the company doctors, Rapid Response Urgent Care. There, she was seen and treated by a physician's assistant, Ken Boccaccio. Defendants paid for this treatment.
7. Plaintiff was first seen at Rapid Response on August 2, 1999. Notes from Rapid Response reveal plaintiff had no prior history of hand, wrist or arm symptoms. She was prescribed conservative treatment and was restricted to modified duty and limited to no lifting over 10 pounds, with restrictions against repetitive activity. On August 5, 1999, plaintiff's limitations were increased to include no repetitive activity of the fingers, as well as the wrists, and no typing at all. After plaintiff's condition did not improve, she was referred to Raleigh Orthopedic Clinic for evaluation on August 16, 1999.
8. Plaintiff saw Dr. Joel Krakauer, an expert in orthopedic surgery, specializing in hand and upper extremity surgery, on September 22, 1999. He diagnosed plaintiff with bilateral lateral epicondylitis. Several months of conservative treatment failed to give plaintiff significant relief, so Dr. Krakauer recommended the possibility of lateral epicondylar release surgery. Plaintiff indicated she wanted to think about this option. Plaintiff has not been able to see Dr. Krakauer since December 1999, because she has no health insurance and her claim was denied.
9. Plaintiff's bilateral hand, wrist and arm symptoms were more likely than not caused by the job duties performed in her employment with defendant. Plaintiff's symptoms were more likely than not due to causes and conditions characteristic of, and peculiar to, her job as an assembler with defendant. The general public is not equally exposed to the hazards of repetitive activity which plaintiff faced in her employment.
10. As a result of her epicondylitis, plaintiff has been unable to return to work with defendant-employer due to her work restrictions. In October 1999, she began working for Food Lion. Plaintiff was forced to quit the job with Food Lion due to increased pain. On January 10, 2000, plaintiff began working thirty hours per week as a cashier at Burger King making $6 per hour, and continued in that job at the time of the hearing before the Deputy Commissioner. There is no evidence in the record to establish that plaintiff is restricted to working 30 hours per week due to her injury.
11. Defendants presented evidence that plaintiff was offered and refused a temporary, as needed, light-duty job with a different employer, which involved job duties of faxing, filing, stuffing envelopes and other activities with the hands. No job description of this employment has been presented to or approved by any doctor. Because of the repetitive nature of the work, which involved extensive use of plaintiff's hands, this job was not suitable employment. In the opinion of the Commission, plaintiff justifiably refused the work offered by defendant-employer.
12. Defendants offered more testimony about several other modified jobs plaintiff might be able to perform. None of these jobs was ever offered to plaintiff. None of these jobs was ever approved by any doctor.
13. Plaintiff has not reached maximum medical improvement.
14. As a result of her epicondylitis, plaintiff will require future medical treatment, including possible surgery.
15. In February 2000, while working 30 hours per week at Burger King, plaintiff enrolled at Wake Technical Community College for retraining as a pharmaceutical technologist.
16. A Form 22 Wage Chart was submitted to the Industrial Commission. However, plaintiff did not work enough weeks to determine an average weekly wage from said form. Plaintiff's average weekly wage, calculated from her testimony, is $310.00.
17. Defendants' defense of plaintiff's claim was not the result of stubborn, unfounded litigiousness.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's bilateral epicondylitis is due to causes and conditions which are characteristic of and peculiar to her work with defendant-employer. Her work with defendant-employer is a significant casual factor in the development of her bilateral symptoms. Therefore, plaintiff has sustained a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of plaintiff's compensable occupational disease, she was unable to earn wages in any employment and was temporarily totally disabled from August 3, 1999 until January 9, 2000. For her temporary total disability, plaintiff is entitled to receive compensation at the rate of $206.68 per week for this period, subject to a deduction for any wages earned by plaintiff at Food Lion. N.C. Gen. Stat. § 97-29.
3. Plaintiff has been physically unable to perform her former job with defendant-employer. Plaintiff's refusal of the job offered by defendants was justified in that the work was not suitable. N.C. Gen. Stat. §97-32. However, plaintiff failed to prove that her limitation to 30 hours per week in her current job is due to her work-related injury. Therefore, plaintiff retains wage earning capacity which would allow her to earn reduced wages working 40 hours per week at Burger King.
4. Plaintiff is entitled to compensation for temporary partial disability at the rate of two-thirds of the difference between her former average weekly wage of $310.00 and her current average weekly wage based on a 40 hour work week earning $6 per hour or $240 per week at Burger King beginning January 10, 2000, and continuing for so long as she remains partially disabled, subject to the 300-week statutory limitation. N.C. Gen. Stat. § 97-30.
5. Plaintiff's medical treatment was necessary to give relief, effect a cure and lessen plaintiff's period of disability and plaintiff is entitled to have defendants pay for said treatment. N.C. Gen. Stat. § 97-25.
6. Defendants' denial and defense of this claim was not unreasonable and plaintiff is not entitled to attorney's fees. N.C. Gen. Stat. §97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. As a result of plaintiff's occupational disease, defendants shall pay temporary total compensation to plaintiff at the rate of $206.68 per week, subject to a deduction for amounts earned by plaintiff in her unsuccessful attempts to return to work, from August 3, 1999 until January 9, 2000. Said compensation that has accrued shall be paid in one lump sum, subject to an attorney's fee approved below.
2. Defendants shall pay compensation to plaintiff for partial disability at the rate of two-thirds the difference between her former average weekly wage of $310.00 and the weekly wage of $240.00 per week she would earn at Burger King working 40 hours a week from January 10, 2000 and continuing for so long as she remains disabled, subject to the 300-week statutory limitation.
3. Defendants shall pay for all medical treatment incurred or to be incurred as a result of her compensable occupational disease for so long as such treatment is necessary to give relief, effect a cure or lessen plaintiff's period of disability. Plaintiff may choose to have Dr. Krakauer designated as her treating physician. Otherwise, medical treatment shall be directed by the defendants subject to further order of the Industrial Commission.
4. Defendants shall pay plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of compensation due plaintiff under Paragraphs 1 and 2 of this award. Of the accrued amount paid in a lump sum to plaintiff, defendants shall deduct 25% of said compensation and forward that amount directly to plaintiff's counsel. For the balance of the attorney's fee, defendants shall send every fourth compensation check to plaintiff's attorney.
5. Defendants shall pay the costs.
This the ___ day of September 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb